IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

NOV 0 2 2007

Michael N. Milby, Clerk of Court

| | |
|---|---|
| VIRGINIA ROSAS, ARMANDO AND ) <br> MARIA CASTENEDA, LARRY ) <br> COFFMAN, PATSY GOMEZ, ) <br> DYLISALY HANDY, MICHAEL ) <br> HARLAN, ARTHUR AND KATHY ) <br> LAFOUR, MICHAEL AND TAMENNA ) <br> NICHOLS, LASANDRA AND CORNELL ) <br> APPLIN, STELLA SALAS, MARCILIA ) <br> SALAZAR, KEITH AND ESTER ) <br> SIMPSON, CURTIS AND ELIZABETH ) <br> SONNTAG, DIANA TREVINO, AND ) <br> JEFF AND DIANA WALKER, ) <br> ) <br>     Plaintiffs, ) <br> v. ) <br> ) <br> OCWEN LOAN SERVICING, LLC, AS ) <br> SUCCESSOR BY MERGER WITH ) <br> OCWEN FEDERAL BANK, FSB, ) <br> ) <br>     Defendant. ) | Civil Action No. <br><br> JURY demanded by Plaintiffs |

## NOTICE OF REMOVAL

Defendant Ocwen Loan Servicing, LLC, successor in interest to Ocwen Federal Bank FSB, ("Ocwen") respectfully notifies the Court pursuant to 28 U.S.C. § 1441 that it has this day removed this action from County Court at Law No. 2 of Nueces County, Texas, to this Court. In support of its removal, Ocwen submits this notice. Removal is based on the grounds that diversity jurisdiction exists over this action because there is complete diversity between Plaintiffs and Ocwen and the amount in controversy exceeds $75,000. Removal is also based on the grounds that federal question jurisdiction exists over this action because it involves claims that necessitate the resolution of substantial, disputed questions of federal law.

## BACKGROUND

1.    This action was originally filed as Cause No. 07-62195-2 in the County Court at Law No. 2 of Nueces County, Texas on October 4, 2007.  A certified copy of the Docket Sheet from Cause No. 07-62195-2 in the County Court at Law No. 2 of Nueces County, Texas is attached hereto as Exhibit A.  True and correct copies of all pleadings filed in the state court are attached hereto as Exhibits B-1 through B-2.

2.    Ocwen was served on October 8, 2007.  This removal is therefore timely because it has been filed within 30 days of service as required by 28 U.S.C. § 1446(b).

3.    Plaintiffs' complaint alleges a variety of claims relating to Ocwen's servicing of and eventual foreclosure on Plaintiffs' mortgage loans.  (*See, e.g.*, Compl. ¶¶ 30-69.)  This action is removable to federal court pursuant to 28 U.S.C. § 1441 because it could have been filed originally in this Court pursuant to the diversity jurisdiction conferred by 28 U.S.C. § 1332 and the federal question jurisdiction conferred by 28 U.S.C. § 1331.  Supplemental jurisdiction exists with respect to any remaining claims pursuant to 28 U.S.C. § 1367.

## DIVERSITY JURISDICTION

4.    Federal diversity jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1332 because all relevant parties are diverse and the amount in controversy exceeds $75,000.

## THERE IS COMPLETE DIVERSITY AMONG ALL PARTIES

5.    There is diversity of citizenship among all parties.  Plaintiffs Virginia Rosas, Armando and Maria Casteneda, Larry Coffman, Dylisaly Handy, Michael Harlan, Arthur and Kathy Lafour, Michael and Tamenna Nichols, Lasandra and Cornell Applin, Stella Salas, Marcilia Salazar, Keith and Esther Simpson, Curtis and Elizabeth Sonntag, Diana Trevino, and

Jeff and Diana Walker are citizens of Texas. (*See* Compl. ¶¶ 14-16, 18-28.) Plaintiff Patsy Gomez is a citizen of Arizona. (*See id.* ¶ 17.)

6.     Ocwen is a citizen of Florida. As of June 30, 2005, Ocwen Federal Bank FSB voluntarily dissolved, and its mortgage servicing business was transferred to Ocwen Loan Servicing, LLC. (*See* Declaration of Chomie Neil ("Neil Decl.") ¶ 2 (attached at Exh. C).) Ocwen Loan Servicing, LLC is a limited liability company. For diversity purposes, "several district courts within the Fifth Circuit have determined the citizenship of a limited liability company by looking to the citizenship of its members." *Blanchard v. Wal-Mart Stores Tex., L.P.* 368 F. Supp. 2d 621, 625 (E.D. Tex. 2005) (explaining that the majority of federal appellate courts determine citizenship of limited liability companies in the same manner); *see also Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). The sole member of Ocwen Loan Servicing, LLC is Ocwen Financial Corporation, which is a citizen of Florida. (*See* Neil Decl. ¶ 3.)

7.     Because the Plaintiffs are citizens of Texas and Arizona, and Ocwen is a citizen of Florida, there is complete diversity between Plaintiffs and defendant. *See* 28 U.S.C. § 1332(a)(1).

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

8.     Plaintiffs' complaint also meets the $75,000 amount-in-controversy requirement for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

9.     In the complaint, Plaintiffs assert eight causes of action against Ocwen, including intentional tort claims for intentional infliction of emotional distress and violations of Texas debt collection laws. (*See* Compl. Counts A-H.) They contend, among other things, that Ocwen wrongfully instituted foreclosure proceedings against them; demanded more than was actually

due to avoid foreclosure; failed to accept payments and pretended that lack of payment was a default; and harassed them concerning payment of sums they did not owe. (*See* Compl. ¶¶ 73, 83.) For these alleged wrongs (which Ocwen emphatically denies), Plaintiffs seek an unlimited amount of compensatory and punitive damages.

10.    Where, as here, a plaintiff seeks recovery of an indeterminate amount, diversity jurisdiction exists where a removing defendant establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003) (quoting *DeAguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)). This burden may be met if "it is facially apparent" from the complaint that the plaintiff's claims "are likely" to exceed $75,000, exclusive of interest and costs. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The determination of whether jurisdiction is "facially apparent" is "left in part to the court's intuition and common sense." *HWJ, Inc. v. Burlington Ins. Co.*, 926 F. Supp. 593, 595 (E.D. Tex. 1996). Where jurisdiction is not "facially apparent," the removing defendant may use "summary judgment-type evidence" to establish that the amount in controversy exceeds $75,000. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). Jury verdicts in similar cases constitute competent evidence that the jurisdictional amount requirement has been met. *See, e.g., Amos v. Citifinancial, Inc.*, 243 F. Supp. 2d 587, 590-91 (N.D. Miss. 2003) (denying motion to remand and noting that "cases involving consumer loan disputes in Mississippi have resulted in jury verdicts for punitive damages in the millions").

11.    While Plaintiffs' complaint does not specify an amount of requested damages, it nonetheless is facially apparent that the damages claimed exceed the $75,000 jurisdictional threshold. In a case involving similar claims against Ocwen recently tried to verdict, the total jury award (even after application of statutory damages caps) exceeded $1 million. *See Davis v.*

*Ocwen Federal Bank FSB*, et al., No. 04-CV-1469 (District Court of Galveston County, Texas). For jurisdictional purposes, the amount in controversy includes punitive damages. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 n.7 (5th Cir. 1998). Other jury verdicts in Texas relating to consumer loan disputes have resulted in punitive damages awards far exceeding the jurisdictional minimum. *See, e.g., Garcia v. W.M.C. Mortgage Co.*, No. 2000-CI-90121, 73rd District of Bexar County, Texas (jury awarded $460,000 in punitive damages for violations of the Deceptive Trade Practices Act and the Truth in Lending Act relating to plaintiff's home mortgage loan); *Home Loan Corp. v. Thompson*, No. 2001-46491, 215th Judicial District, Harris County, Texas (jury awarded $550,000 in punitive damages for fraud and contract claims relating to plaintiff's home mortgage loan); *Moreno v. Kleberg First National Bank of Kingsville*, 105th District of Kleberg County, Texas (jury verdict included $2 million in punitive damages against bank for fraud claims and threats of foreclosure relating to plaintiff's home mortgage loan); *Brown v. Spencer Mortgage & Investments*, No. DV-99-02185-C, 68th Judicial District of Dallas County, Texas (bench trial award of $343,332 for mental anguish for fraud claims relating to refinance and wrongful foreclosure of plaintiff's home). While many of these actions involved one borrower relating to one mortgage loan, this action is brought by *twenty-two* borrowers relating to fifteen mortgage loans. Ocwen categorically denies that Plaintiffs are entitled to an award of damages in any amount whatever, but there can be no question that Plaintiffs' complaint places an amount in controversy that significantly exceeds $75,000.

12.    In addition to damages, Plaintiffs claim a statutory entitlement to attorneys' fees. (Compl. ¶ 98.) Attorneys' fees claimed under a statutory provision are included as part of the amount in controversy. *See Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981) (citing *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199 (1933)). In Plaintiffs' counsel's recent

similar case against Ocwen, counsel argued for an award of attorney's fees totaling $2,760,525, and the jury returned a verdict that included attorneys' fees in the hundreds of thousands of dollars. *Davis v. Ocwen Federal Bank FSB*, et al., No. 04-CV-1469 (District Court of Galveston County, Texas). Similar cases have awarded attorneys' fees exceeding the jurisdictional minimum. *See, e.g., Moreno v. Kleberg First National Bank of Kingsville*, 105th District of Kleberg County, Texas (jury verdict included $570,000 in attorneys' fees against bank for fraud claims and threats of foreclosure relating to plaintiff's home mortgage loan). Given the complexity of Plaintiffs' allegations, the likelihood of significant motion practice (including motions to dismiss, summary judgment motions, and others), and the presence of nearly two dozen plaintiffs, Plaintiffs' attorneys' fee claim alone places in controversy an amount that exceeds $75,000. For this independent reason, it is facially apparent from the complaint that Plaintiffs' claims exceed the jurisdictional threshold.

### FEDERAL QUESTION JURISDICTION

13.    Federal question jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims the resolution of which will necessitate adjudication of substantial, disputed questions of federal law. Even where a particular claim does not arise directly under federal law, it is removable to federal court if it depends on the resolution of substantial predicate questions of federal law. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 125 S. Ct. 2363, 2367 (2005). Here, federal question jurisdiction exists because Plaintiffs' claims depend on the determination of Plaintiffs' rights and defendants' duties, if any, under federal law.

14.    Plaintiffs' complaint alleges that "Ocwen routinely violates federal laws." (Compl. at 5.) Specifically, "Plaintiffs allege that Defendant has engaged in a regular pattern of

violations of the following federal laws:  Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), with respect to unlawful collection practices, collecting or seeking to collect amounts not legally due and owing, failing to provide required disclosures in collection letters, and harassing borrowers."  (*Id.* ¶ 10.)  Plaintiffs' claim that Ocwen violated FDCPA thus requires the resolution of substantial predicate questions of federal law.

15.     Plaintiffs further allege that Ocwen "demand[ed] and/or obtain[ed] Bankruptcy Charges in violation of bankruptcy law and disclosure requirements."  (Compl. ¶ 55(s).) Plaintiffs' claim that Ocwen violated various provisions of the Bankruptcy Code requires the resolution of substantial predicate questions of federal law.

16.     Plaintiffs allege that Ocwen "consistently fail[ed] or refuse[d] to address Borrower complaints."  (Compl. ¶ 60.)  The federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, creates a "[d]uty of [a] loan servicer to respond to borrower inquiries." 12 U.S.C. § 2605(e).  Under RESPA, after receipt of a borrower's inquiry, the loan servicer is required to provide a written explanation or clarification of the information requested. *See id.*  Plaintiffs' claim that this duty was breached thus depends on the existence, scope, and breach of Ocwen's duties, if any, under RESPA.

17.     In these and other respects, the claims asserted in Plaintiffs' complaint necessitate the resolution of substantial, disputed questions of federal law sufficient to confer federal subject-matter jurisdiction on this Court.

## VENUE

18.     Venue for removal is proper in this district and division under 28 U.S.C. § 1441(a) because this district and division embrace the County Court at Law No. 2 of Nueces County, Texas, the forum in which the removed action was pending.

## NOTICE

19.     Concurrently with the filing of this Notice, Ocwen will file a copy of this Notice of Removal in Cause No. 07-62195-2 in the County Court at Law No. 2 of Nueces County, Texas.

20.     The contents of Exhibit B constitute the entire file of Cause No. 07-62195-2 in the County Court at Law No. 2 of Nueces County, Texas.

Respectfully submitted,

By: _Mark D. Cronenwett_ *perm. by US*

**MARK D. CRONENWETT**
Texas Bar No. 00787303
Attorney in Charge
Southern District Admission # 21340

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)

**LINDSAY L. STANSBERRY**
Texas Bar No. 24041968
Southern District Admission # 34578

**COWLES & THOMPSON, P.C.**
1202 First Place
Tyler, TX 75702
(903) 596-9000
(903) 596-9005 (Fax)

ATTORNEYS FOR DEFENDANT OCWEN
LOAN SERVICING, LLC, SUCCESSOR IN
INTEREST TO OCWEN FEDERAL BANK FSB

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Notice of Removal was served by certified mail, return receipt requested, on this the 1st day of November 2007 on the following:

William H. Oliver, Esq.
Pipkin, Oliver & Bradley, L.L.P.
1020 Northeast Loop 410, Suite 810
San Antonio, Texas  78209

Robert C. Hilliard, Esq.
Hilliard & Munoz, L.L.P.
719 S. Shoreline Blvd., Suite 500
Corpus Christi, Texas  78401

Edward M. Carstarphen, Esq.
Ellis, Carstarphen, Dougherty & Coldenthal, P.C.
5847 San Felipe, Suite 1900
Houston, Texas 77057

LINDSAY L. STANSBERRY

## List of All Known Counsel of Record

For All Plaintiffs

William H. Oliver, Esq.
Pipkin, Oliver & Bradley, L.L.P.
1020 Northeast Loop 410, Suite 810
San Antonio, Texas 78209
210.820.0082 (Phone)
210.820.0077 (Fax)

Robert C. Hilliard, Esq.
Hilliard & Munoz, L.L.P.
719 S. Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
361.882.1612 (Phone)
361.882.3015 (Fax)

Edward M. Carstarphen, Esq.
Ellis, Carstarphen, Dougherty & Coldenthal, P.C.
5847 San Felipe, Suite 1900
Houston, Texas 77057
713.647.6800 (Phone)
713.647.6884 (Fax)

For Defendant Ocwen Loan Servicing, LLC, Successor in Interest to Ocwen Federal Bank FSB
("Ocwen")

Mark D. Cronenwett,
Lead Attorney
COWLES & THOMPSON, PC
901 Main St., Suite 4000
Dallas, TX 75202
214.672.2000 (Phone)
214.672.2020 (Fax)

Lindsay L. Stansberry
COWLES & THOMPSON, PC
1202 First Place
Tyler, TX 75702
903.596.9000 (Phone)
903.596.9005 (Fax)

## INDEX OF DOCUMENTS ATTACHED

Exhibit A       Certified Copy of the Docket Sheet for Cause No. 07-62195-2 in the County Court at Law No. 2 of Nueces County, Texas;

Exhibit B       Pleadings in Cause No. 07-62195-2 in the County Court at Law No. 2 of Nueces County, Texas;

    B-1       Plaintiffs' Original Petition and Request for Disclosure, filed October 4, 2007;

    B-2       Defendant's Motion to Transfer Venue, and subject thereto, Special Exceptions and Original Answer by Ocwen Loan Servicing, LLC, Successor in Interest to Ocwen Federal Bank, FSB filed October 26, 2007; and

Exhibit C       Declaration of Chomie Neil.

# EXHIBIT A

RUN DATE 10/12/2007
RUN TIME 4:35 PM

```
                              *   *   *   C L E R K ' S   E N T R I E S   *   *   *

                         ROSAS, VIRGINIA, ET AL

                                    VS

                         OCWEN LOAN SERVICING, LLC.


                    *  *  *  DOCKET ENTRIES  *  *  *

10/04/2007   ORIGINAL PETITION FILED
10/04/2007   CIVIL CASE INFO SHEET/FP
10/04/2007   SVC INFO SHEET REQ NO SVC/FP
10/04/2007   CITATION NPDC: VIRGINIA ROSAS
```

PAGE: 001

FROM 01/01/1901  THRU 10/12/2007    07-62195-00-0-2

(06)
ACCOUNTS, CONTRACTS, NOTES

FILED:  10/04/2007

# Exhibit B-1

CAUSE NO. _07-62195-2_

| | | |
|---|---|---|
| VIRGINIA ROSAS, ARMANDO AND | § | IN THE COUNTY COURT |
| MARIA CASTENEDA, LARRY COFFMAN, | § | |
| PATSY GOMEZ, DYLISALY HANDY, | § | |
| MICHAEL HARLAN, ARTHUR AND KATHY | § | |
| LAFOUR, MICHAEL AND TAMENNA | § | |
| NICHOLS, LASANDRA AND CORNELL | § | |
| APPLIN, STELLA SALAS, MARCILIA | § | |
| SALAZAR, KEITH AND ESTHER SIMPSON, | § | |
| CURTIS AND ELIZABETH SONNTAG, | § | |
| DIANA TREVINO, AND JEFF AND DIANA | § | |
| WALKER | § | |
| | § | |
| **Plaintiffs** | § | AT LAW NO. _2_ |
| | § | |
| VS. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC, AS | § | |
| SUCCESSOR BY MERGER WITH OCWEN | § | |
| FEDERAL BANK, FSB | § | |
| | § | |
| **Defendant** | § | NUECES COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs allege the following upon information and belief based, among other things, upon the investigation made by Plaintiffs by and through their attorneys:

### INTRODUCTION

1.      Plaintiffs bring this action and allege the following:

2.      This case involves the actions of Defendant Ocwen Loan Servicing, LLC (formerly Ocwen Federal Bank, FSB) (hereinafter referred to as "Ocwen") and its affiliates and agents. Ocwen services residential mortgage loans.

3.      As alleged herein, Defendant has engaged in a nationwide scheme of illegal, unfair, unlawful, and deceptive business practices that violate both federal and state law in the servicing of home-secured loan transactions and in the provision of certain related services,

including debt collection and foreclosure services. This scheme is carried out by means of a centrally-controlled set of policies and practices and is implemented with form documents, form notices and uniform accounting mechanisms.

4.      The phrase "loan terms" or "loans" refers to all contractual terms relating to the mortgage instruments, whether they be in the underlying note, forbearance agreements, mortgages, deeds of trusts, or other related instruments.

5.      Defendant routinely seeks to collect, and does collect, various fees, costs and charges that are not authorized by the terms of the loans, including "recoverable breach fees," unnecessary hazard insurance premiums, attorneys' fees, unexpended foreclosure-related fees and costs, and other fees that are either not legally due under the mortgage contract.

6.      The Defendant also mishandles borrowers' mortgage payments and fails to timely or properly credit payments received in violation of the loan terms, resulting in late charges, delinquencies or default.

7.      It is also Ocwen's practice to force place hazard insurance covering properties securing loans serviced by Ocwen, including in instances where the borrower has an existing policy of hazard insurance in force, and then to charge borrowers unnecessary and excessive insurance premiums not authorized by the loans. The improper insurance charges often result in forcing the consumers into default under the terms of their mortgages, resulting in further improper and unauthorized fees and charges to their escrow accounts, which are controlled by Defendant.

8.      Ocwen routinely treats borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements.

9.      Ocwen's servicing and collection practices frequently contribute to or cause Ocwen's borrowers to seek relief under the bankruptcy laws in order to prevent foreclosure or to preserve assets.    Ocwen then secretly places various illegal bankruptcy-related costs and bankruptcy-related fees on borrowers' accounts and seeks to collect such fees during or after bankruptcy.  These bankruptcy fees and costs are not submitted to or approved by the bankruptcy court as required by law.

10.    Plaintiffs allege that Defendant has engaged in a regular pattern of violations of the following federal laws: Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), with respect to unlawful collection practices, collecting or seeking to collect amounts not legally due and owing, failing to provide required disclosures in collection letters, and harassing borrowers.

11.    Plaintiffs also allege that Defendant's practices are misleading, deceptive and/or unfair under state law including under, without limitation, Texas Deceptive Trade Practices Act, Unreasonable Debt Collection Practices under the Act and the Texas common law.

12.    Finally, Plaintiffs seek injunctive relief to prevent recurrence of the challenged conduct, and to assure uniform standards of future servicing of loans and equitable relief and damages for themselves, including restitution and disgorgement of funds obtained by Defendant in violation of state and federal law.

### JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action because each Plaintiff seeks damages in excess of the minimum jurisdictional limits of this court. Venue is proper in this Court because Plaintiff Rosas is a resident of Corpus Christi, Nueces County, Texas and the property which gives rise to Plaintiff Rosas' claims against Defendant is located in Corpus Christi,

Nueces County, Texas. Furthermore, the claims of the other plaintiffs are properly consolidated in this action because Plaintiffs allege that the claims of each of the Plaintiffs in this action arise from a common nexus of fact and law, namely Ocwen's pattern of wrongful acts (as detailed in this Petition), and that joinder of claims is therefore proper in this Petition.

**PARTIES**

**Plaintiffs**

14.     Plaintiff Virginia Rosas is a resident of Corpus Christi, Texas. Ocwen attempted wrongful foreclosure on her home at 3001 Churchill Drive, Corpus Christi, Texas 78404.

15.     Plaintiffs Armando and Maria Casteneda are residents of Nazareth, Texas, whose home at 204 W. Halsell, Dimmit, Texas 79027 was wrongfully foreclosed upon by Ocwen.

16.     Plaintiff Larry Coffman is a resident of Humble, Texas, whose home at 6803 Moss Oak Drive, Houston, Texas 77050 was wrongfully foreclosed upon by Ocwen.

17.     Plaintiff Patsy Gomez is a resident of Chandler, Arizona, whose home at 249 Weewoka, El Paso, Texas 79936was wrongfully foreclosed upon by Ocwen.

18.     Plaintiff Dylisaly Handy is a resident of Houston, Texas, whose home at 3339 Brookston, Houston, Texas 77045 was wrongfully foreclosed upon by Ocwen.

19.     Plaintiff Michael Harlan is a resident of Dickinson, Texas, whose home at 5409 Marie Drive, Texas City, Texas 77539 was wrongfully foreclosed upon by Ocwen.

20.     Plaintiffs Arthur and Kathy LaFour are residents of Mt. Belvieu, Texas, whose home at 13028 FM 1409, Dayton, Texas 77535 was wrongfully foreclosed upon by Ocwen.

21.     Plaintiffs Michael and Tamenna Nichols are residents of La Marque, Texas. Ocwen attempted wrongful foreclosure on their home at 6 Clover Bend Street, La Marque, Texas 77568.

-4-

22.    Plaintiffs Lasandra and Cornell Applin are residents of Arlington, Texas, whose home at 925 Fiero Drive, Arlington, Texas 76017 was wrongfully foreclosed upon by Ocwen.

23.    Plaintiff Stella Salas is a resident of San Antonio, Texas.  Ocwen attempted wrongful foreclosure on her home at 1118 Sims Avenue, San Antonio, Texas 78225.

24.    Plaintiff Marcilia Salazar is a resident of Laredo, Texas, whose home at 8682 Northridge, Laredo, Texas 78041 was wrongfully foreclosed upon by Ocwen.

25.    Plaintiffs Keith and Esther Simpson are residents of Houston, Texas, whose home at 8402 Rockford, Houston, Texas 77033 was wrongfully foreclosed upon by Ocwen.

26.    Plaintiffs Curtis and Elizabeth Sonntag are residents of Willis, Texas, whose home at 21803 Ashtree Lane, Houston, Texas 77073 was wrongfully foreclosed upon by Ocwen.

27.    Plaintiff Diana Trevino is a resident of Alamo, Texas, whose home at 3808 Bluebird, McAllen, Texas 78504 was wrongfully foreclosed upon by Ocwen.

28.    Plaintiffs Jeff and Diana Walker are residents of Conroe, Texas, whose home at 608 Garrett, Conroe, Texas 77301 wrongfully foreclosed upon by Ocwen.

### Defendant

29.    Defendant OCWEN LOAN SERVICING, LLC, AS SUCCESSOR BY MERGER WITH OCWEN FEDERAL BANK, FSB is, upon information and belief, a Delaware limited liability company. Ocwen Loan Servicing, LLC's principal place of business is located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.  Ocwen Loan Servicing, LLC may be served with process in this lawsuit by serving its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

## FACTUAL BACKGROUND

### I.    OCWEN'S BUSINESS MODEL

30.    Ocwen currently services single-family residential loans, an enterprise worth more than $30 billion.

31.    Ocwen has claimed on its website that it has "superior servicing capabilities" and focuses on "what empowers our customers," allowing "servicing customers [to] reap the benefits of Ocwen's comprehensive approach to adding value to distressed loans."

32.    Ocwen is in the business of servicing loans originated through other mortgage lenders.

33.    Upon information and belief, Ocwen is the note holder for some but not all of the loans that it services.

34.    Ocwen also refinances existing loans that are already being serviced by Ocwen.

35.    Upon information and belief, when Ocwen refinances a loan, it acts as a mortgage originator and then sells the loan to a third party.

36.    Upon information and belief, when Ocwen refinances a loan, Ocwen continues to maintain servicing rights.

37.    Upon information and belief, as a mortgage servicer, Ocwen profits by charging borrowers late fees, penalties for non-sufficient funds, penalties for returned checks, among other charges.

38.    Upon information and belief, in accordance its servicing agreements with the loan holders, Ocwen profits even when the homes are foreclosed on.

39.    Upon information and belief, Ocwen purchases mortgage loans that it forecloses on.

40.    Upon information and belief, Ocwen loses money when borrowers prepay their loans because they lose the opportunity to earn a profit through loan servicing.

41.    Upon information and belief, Ocwen's policy is to proceed with a foreclosure even while its loan resolution employees are simultaneously trying to resolve a loan.

42. Upon information and belief, Ocwen has a system of compensation that rewards employees for using aggressive collection techniques.

## II.    OCWEN ROUTINELY VIOLATES FEDERAL LAWS

### Defendant Has Improperly Initiated Default And Foreclosure Proceedings Under The Loan, Mortgage And Deed Of Trust Terms And Engaged In Improper Debt Collection Activities

43. Ocwen represents on its website that its "specialized expertise and advanced technology are applied hand in hand so clients can enjoy lower costs, faster turnarounds and higher recovery values." However, upon information and belief, Ocwen's internal procedures are such that if a payment is late according to Ocwen's own faulty record-keeping, even if the payment arrives within the grace period prescribed by the loan contract, the loan is prematurely referred to collections, and reported as delinquent to national credit reporting agencies.

44. Defendant has engaged in a pattern and practice of collecting debts that are not authorized by the loan terms, as described more fully below.

45. Defendant has engaged in a pattern and practice of charging unwarranted attorneys' fees, which are not authorized by the loan terms, for properties it has erroneously categorized as being in default. Defendant uses common and uniform tactics to obtain these monies, including erroneously assessing fees on invoices directly or on demand letters from Defendant for unwarranted attorneys' fees.

46. Defendant's conduct results in the assessment of unwarranted and unfair fees against consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.

47. Defendant is a debt collector within the meaning of the FDCPA and applicable state laws.

## III.    OCWEN ROUTINELY BREACHES THE TERMS OF THE LOAN AGREEMENTS

48. **Terms of Mortgage Loan Agreements Serviced by Ocwen:** Each Borrowers' loan is governed by a loan note and a security agreement (mortgage or deed of trust). These loan

notes and security agreements, which are referred to as "loan terms," set various limits on the amounts the Borrowers may be obligated to pay to satisfy their loan obligations.

49.    The loan terms provide the terms on which Borrowers' monthly payments of principal and interest are set.

50.    The loan terms uniformly determine whether the Borrowers are obligated to make escrow payments for taxes and insurance.

51.    The loan terms uniformly provide the terms on which Borrowers' payments are to be considered timely and the amount of any late charge if the Borrowers' payments are late. The loan terms uniformly provide that if a payment is made within a certain period after its due date (typically known as "the grace period"), no late charge will be due.

52.    The loan terms uniformly provide the terms on which Prepayment Penalties will be due. If the loan terms include a provision for a Prepayment Penalty, those contracts also set out how such penalty would be calculated.

53.    The loan terms uniformly obligate the Borrowers to maintain hazard insurance on their property, but provide that the noteholder or mortgagee may purchase hazard insurance in the event that Borrowers either fail to procure hazard insurance or allow their hazard insurance to lapse. A hazard insurance policy procured for the Borrowers' property on behalf of a mortgagee or noteholder is typically known as a "forced-place" or "replacement" policy. The loan terms do not permit the mortgagee or the noteholder (or their agents) to obtain a forced-place or replacement hazard insurance policy if the Borrowers have procured proper hazard insurance coverage.

54.    The loan terms uniformly provide the terms on which Borrowers may be charged default and/or delinquency related charges including, without limitation, inspection charges, title search charges, appraisal or broker price opinion charges, attorneys fees for collection and/or foreclosure, costs of advertising foreclosure (hereinafter "Default Charges"). Under the loan terms, Default Charges may not be imposed unless Borrowers have breached their loan obligations. The terms of the loan terms also uniformly require that any Default Charges

imposed on the borrower be reasonable including, without limitation, that the Charges be reasonable in amount and actually incurred.

55.    The loan terms uniformly provide the terms on which Borrowers may be charged bankruptcy related charges including, without limitation, proof of claim charges, bankruptcy fees and costs, bankruptcy litigation charges, filing fees and attorney's fees for bankruptcy work (hereinafter "Bankruptcy Charges"). The terms of the loan terms uniformly require that any Bankruptcy Charges imposed on the borrower be reasonable including, without limitation, that the Charges be approved by the Court and/or reasonable in amount and/or actually incurred.

56.    Ocwen has violated the loan terms of each Plaintiff in one or more of the following ways:

a.    miscalculation of Borrowers' obligation to make payments of principal and interest under variable rate mortgage terms;

b.    miscalculation of amounts due for taxes and insurance on Borrowers' escrow accounts;

c.    increasing the Borrowers' monthly payment obligations without cause;

d.    failure to credit payments;

e.    misapplication of payments to charges not due;

f.    failure to timely credit payments when received;

g.    ignoring the payment grace period and thereby charging unauthorized late fees;

h.    demanding and/or obtaining late payment charges for payments that were not late;

i.    demanding and/or obtaining late payment charges in incorrect amounts;

j.    placing misapplied payments into "suspense accounts," which allows Ocwen to divert customer payments away from application as mortgage loan payments and results in additional unauthorized fees;

k.    demanding and/or obtaining Prepayment Penalties in circumstances in which such Prepayment Penalties were not due;

l.    demanding and/or obtaining Prepayment Penalties in incorrect amounts;

m.      demanding and/or obtaining payments for force-placed or replacement insurance from Borrowers when those Borrowers had hazard insurance in place;

n.      demanding and/or obtaining payments for forced-placed or replacement insurance in unreasonable amounts including, without limitation, that such amounts exceed Ocwen's own cost to obtain such policies;

o.      demanding and/or obtaining Default Charges from borrowers who are not in default;

p.      demanding and collecting "Recoverable Breach Fees" when such fees are not authorized by the loan terms;

q.      demanding and/or obtaining Default Charges in unreasonable amounts including, without limitation, that such amounts exceed Ocwen's actual costs for default related services (title searches, attorney fees, inspections, broker's price opinions, foreclosure advertising) obtained from third parties;

r.      demanding and/or obtaining Default Charges for default related services (title searches, attorney fees, inspections, broker's price opinions, foreclosure advertising) that were not performed;

s.      demanding and/or obtaining Bankruptcy Charges in violation of bankruptcy law and disclosure requirements;

t.      demanding and/or obtaining Bankruptcy Charges in unreasonable amounts including, without limitation, in amounts that exceed Ocwen's actual costs for said services;

u.      demanding and/or obtaining Bankruptcy Charges for work that was not performed. Ocwen engaged in a pattern or practice of the aforesaid breaches of the loan terms because said conduct was profitable to Ocwen;

v.      accelerated mortgages when there are insufficient grounds for doing so under the loan terms.

57.      Ocwen has failed to correct the above-listed problems, even when borrowers have brought it to Ocwen's attention.

58.     Among other things, Ocwen profited by late charges and default and delinquency charges that arose when Borrowers' timely payments were misapplied. A borrower making timely and accurate payments would be treated as late, for example, because a prior payment had been improperly debited for an amount not due and owing. Each payment would then be debited for an additional improper late payment.

59.     Ocwen engaged in pattern and/or practice of the aforesaid breaches of the loan terms without providing information to borrowers concerning how their payments were being applied. Consequently borrowers could not raise and resolve disputes about misapplication of payments. Borrowers then received Delinquency notices and other unexplained correspondence.

60.     Ocwen consistently fails or refuses to address Borrower complaints. Among other things, Ocwen has inadequate staff to address complaints it receives or to properly investigate. At many times relevant to this Complaint, Ocwen did not have personnel sufficient to answer consumer complaints. Complaint handlers have not had access to borrower records other than incorrect records and so cannot properly respond to complaints except to say what the incorrect records show. This failure has necessitated many of the Complaints that underlie this proceeding.

61.     Ocwen profited from its failure by continuing to impose late charges and profitable Default and/or Bankruptcy Charges on borrowers' accounts despite actual or constructive knowledge that payment was disputed.

62.     Ocwen has profited from placing contractually unauthorized charges on Borrowers' accounts by leaving such charges on the accounts, often without active collection efforts or notice to the Borrowers. When Borrowers repay their loans by sale or refinancing, Ocwen demands and collects the unauthorized charges from the proceeds of sale or refinance.

63.     When Ocwen acquires servicing rights from other prior servicers on Borrowers' loans, Ocwen seeks to collect and does collect contractually unauthorized charges imposed by those prior servicers. In the alternative, Ocwen lacks a proper foundation or factual basis for imposing the charges.

64.     Upon information and belief, Ocwen's violations of the mortgage loan terms are exacerbated by problems with the computer software it uses to track mortgage servicing.

## IV.    OCWEN ROUTINELY ENGAGES IN FRAUDULENT, UNFAIR AND/OR DECEPTIVE ACTS OR PRACTICES BY VIOLATING STATE COMMERCIAL LAWS AND COMMON LAW

65.     Ocwen engages in a uniform pattern and practice of unfair and overly-aggressive servicing by misrepresenting that late fees are owed when the payments are timely, or when payments are late as a direct result of Ocwen's failure to provide timely payment information to borrowers upon service being transferred to Ocwen.

66.     Ocwen engages in a uniform pattern and practice of unfair and overly aggressive servicing by charging borrowers fees that are not authorized by the loan terms, by, among other things, ignoring grace periods, creating suspense accounts, misapplying and failing to apply payments, and charging late fees, prepayment penalties, and insurance premiums, none of which are authorized by the loan documents.

67.     Ocwen imposes and collects charges for property inspections, appraisals, and broker price opinions ("BPOs") when no such service has actually been performed, which is a violation of the loan terms.

68.     This conduct results in the assessment of unwarranted and unfair fees against consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.

69.     The scheme implemented by Defendant is designed to defraud consumers and enrich Defendant.

## TOLLING OF STATUTES OF LIMITATIONS BY FRAUDULENT CONCEALMENT

70.     Any applicable statutes of limitations have been tolled by the Defendant's continuing, knowing, and active concealment of the facts alleged herein. Contrary to the representations made on Ocwen's website about the company's "superior servicing capabilities," when Ocwen takes over loans, it routinely violates and breaches loan agreements by, among other things, ignoring grace periods, misapplying and failing to apply payments, and charging

-12-

late fees, prepayment penalties, and insurance premiums, all of which are not authorized by the loan terms. It then actively conceals these breaches of contract by representing that these charges are owed when they are not authorized by the loan terms, and by preventing borrowers from accessing accurate information about their own records. Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein. When Plaintiffs attempted to discover the source of these charges, Defendant refused to provide adequate explanations of the charges and continued to misrepresent the nature of the charges.

71. In the alternative, the Defendant should be estopped from relying on any statutes of limitations. The Defendant has been under a continuing duty to disclose the true character, nature, and quality of its financial services and debt collection practices. By continuing to impose charges and collect on debts not authorized by the loan terms, Defendant prevented Plaintiffs from asserting their rights within the prescribed time periods. The Defendant owed Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### A.   Wrongful Foreclosure; Attempted Wrongful Foreclosure and Declaratory Action.

72. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

73. Defendant committed wrongful foreclosure or has attempted a wrongful foreclosure by virtue of one or more of the following wrongful acts:

> (a)   failing to accept payments and pretending that a lack of payment was a default;
>
> (b)   failing to provide Plaintiffs timely and clear information about the timing and amount of payments owed;

    (c)     misapplying payments received;

    (d)     failing to comply with contractual and/or statutory notice provisions regarding foreclosure;

    (e)     continuing with efforts to foreclose and evict Plaintiffs despite the fact that Plaintiffs have been wrongfully prevented from curing the claimed defaults;

    (f)     continuing efforts to foreclose and evict Plaintiffs despite the fact that Plaintiffs have attempted to refinance and pay off the debt but have been prevented from refinancing and paying off the claimed debt; and

    (g)     demanding more than is actually due to avoid foreclosure.

74.    There is no legal or rightful basis for these acts of Defendant in connection with the wrongful foreclosure or attempted wrongful foreclosure of Plaintiffs' property. In addition to actual and punitive damages, Plaintiffs seek a declaratory judgment that the foreclosures were wrongful, of no effect and void and that the properties properly and legally lie with Plaintiffs.

**B.**    <u>**Breach of Contract**</u>

75.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

76.    Defendant has breached the contracts between them and Plaintiffs by virtue of one or more of the following acts:

    (a)     failing to accept payments and pretending that a lack of payment was a default;

    (b)     failing to provide Plaintiffs timely and clear information about the timing and amount of payments owed;

    (c)     misapplying payments received;

    (d)     failing to comply with contractual and/or statutory notice provisions regarding foreclosure;

(e)    continuing with efforts to foreclose and evict Plaintiffs despite the fact that Plaintiffs have cured the claimed defaults, and/or been wrongfully prevented from curing the claimed defaults;

(f)    continuing efforts to foreclose and evict Plaintiffs despite the fact that Plaintiffs have attempted to refinance and pay off the debt but have been prevented from refinancing and paying off the claimed debt; and

(g)    demanding more than is actually due to avoid foreclosure.

77.    Plaintiffs seek actual damages, interest, and attorneys' fees caused by the breach of contract alleged herein.

### C.    Negligence and Gross Negligence

78.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

79.    Ocwen owed a duty of care to Plaintiffs to adequately train and supervise its staff of loan collectors and servicing agents in the proper and legal servicing of mortgages, such as the mortgage owed by Plaintiffs. Ocwen breached its duty to Plaintiffs by (1) failing to adequately train and/or supervise its staff of loan collectors and servicing agents in the servicing of Plaintiffs' mortgage by allowing the wrongful foreclosure or attempted wrongful foreclosure of Plaintiffs' homes, and (2) providing financial incentives to those collectors and agents for moving properties, including Plaintiffs', into foreclosure.

80.    Ocwen's negligence has proximately caused Plaintiffs to lose their homes or take legal action in order to keep their homes from foreclosure and actual damages for which Plaintiffs seek recovery.

81.    In addition, Ocwen's conduct and neglect was in such complete disregard for Plaintiffs' rights in Plaintiffs' properties as to amount to malice and gross negligence for which Plaintiffs seek to recover punitive damages.

**D.    Intentional Infliction of Emotional Distress.**

82.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

83.    Ocwen's intentional and/or reckless actions reflect its sinister desire to confuse and, if necessary, intimidate Plaintiffs in an effort to attempt a wrongful foreclosure or cause the wrongful foreclosure and Plaintiffs to ultimately lose their homes.  Ocwen's actions have been and continue to be extreme and outrageous, with a complete disregard for Plaintiffs' rights, and have been carried out with the knowledge and sinister desire to sell Plaintiffs' homes covertly through a wrongful and illegal foreclosure.  Ocwen's actions have caused severe emotional distress to Plaintiffs, including embarrassment, fear, humiliation, and unnecessary and excessive worry.

**E.    Unreasonable Debt Collection Practices Under Texas Common Law.**

84.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

85.    The actions of Ocwen in failing properly to account for Plaintiffs' payments, failing to verify the debt on the request of Plaintiffs, posting for foreclosure when Plaintiffs were trying to pay off the debt, preventing Plaintiffs from curing the claimed default, giving inconsistent accounting information on the amount of the debt, and generally failing to cooperate in allowing Plaintiffs to refinance or sell their property, and therefore pay off their mortgage loans, constitute unreasonable debt collection practices under the common law of the State of Texas.  Further, Plaintiffs have suffered the emotional stress that naturally flows from a situation where a mortgage servicing company steps out of its role of servicing and tries to take a home wrongfully.

**F.   Violations of the Texas Debt Collection Practices Act**

86.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

87.   Ocwen, is a debt collector for purposes of the Texas Debt Collection Practices Act ("TDCPA"). Its conduct violates the TDCPA. Its violation of the TDCPA entitles Plaintiffs to injunctive relief and actual damages and attorneys' fees under TDCPA § 392.403.

**G.   Texas Deceptive Trade Practices Act**

88.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

89.   Plaintiffs are consumers under the provisions of the Texas Deceptive Trade Practices – Consumer Protection Act.

90.   The conduct of Ocwen violates the DTPA. Its violation of the Texas Debt Collection Practices Act also amount to violation of the Texas DTPA. These violations have caused Plaintiffs economic and mental anguish damages for which Plaintiffs seek recovery. Its conduct was committed knowingly and, therefore, supports the imposition of additional statutory damages under the Texas DTPA.

**H.   Breach of Fiduciary Duty**.

91.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

92.   Ocwen, as a servicing agent, stands in a fiduciary capacity with respect to Plaintiffs' monthly payments and credits on Plaintiffs' mortgage, escrow account, loan, insurance premiums and other related obligations. Ocwen has breached this duty for the

numerous reasons stated above.   Ocwen's conduct has caused Plaintiffs' losses for which Plaintiffs seek to recover damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves, each request damages in excess of the minimum jurisdictional limits of this court and judgment and relief as follows:

93.    Restitution according to proof;

94.    Rescission;

95.    Actual, compensatory, statutory, treble, exemplary and/or punitive damages according to proof;

96.    Prejudgment interest at the maximum legal rate;

97.    Costs of the proceedings herein;

98.    Reasonable attorneys' fees;

99.    An accounting; and

100.    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby request trial by jury as to all issues so triable.

Dated:   October 4, 2007.

Respectfully submitted,

HILLIARD & MUNOZ, L.L.P.

ROBERT C. HILLIARD
State Bar No. 09677700
Federal ID No. 5912
KEVIN W. GRILLO
State Bar No. 08493500
Federal ID No. 4647

719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401
Telephone: (361) 882-1612
Telecopier: (361) 882-3015

Of Counsel:

PIPKIN, OLIVER & BRADLEY, L.L.P.
WILLIAM H. OLIVER
State Bar No. 15265200
Federal ID No. 13375
1020 N.E. Loop 410, Suite 810
San Antonio, Texas 78209
Telephone: (210) 820-0082
Telecopier: (210) 820-0077

ELLIS, CARSTARPHEN, DOUGHERTY
& GOLDENTHAL P.C.
EDWARD M. CARSTARPHEN
State Bar No. 03906700
Federal ID No. 3989
5847 San Felipe, Suite 1900
Houston, Texas 77057
Telephone: (713) 647-6800
Telecopier: (713) 647-6884

**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT B-2

## CAUSE NO. 07-62195-2

| | | |
|---|---|---|
| **VIRGINIA ROSAS, et al.,** | § | **IN THE COUNTY COURT** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **AT LAW NO. 2** |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| **AS SUCCESSOR BY MERGER WITH** | § | |
| **OCWEN FEDERAL BANK, FSB,** | § | |
| **Defendant.** | § | **NUECES COUNTY, TEXAS** |

### DEFENDANT'S MOTION TO TRANSFER VENUE
### AND, SUBJECT THERETO, SPECIAL EXCEPTIONS AND ORIGINAL ANSWER

**COMES NOW** Defendant Ocwen Loan Servicing, LLC, successor in interest to Ocwen Federal Bank FSB[1] ("Ocwen"), and files this its Motion to Transfer Venue and, subject to its Motion to Transfer Venue and without waiving same, files its Special Exceptions and Original Answer, and respectfully shows as follows:

### I. MOTION TO TRANSFER VENUE

This is a suit by twenty-two plaintiffs, borrowers on mortgage or home equity loans, filed on October 4, 2007 against Ocwen, the servicer or former servicer on Plaintiffs' loans. In their Original Petition, Plaintiffs have alleged Ocwen committed numerous servicing and foreclosure defects with respect to each of their loans. Only one of the twenty-two Plaintiffs has claims involving real property located in Nueces County, Texas. The remaining twenty-one Plaintiffs filed claims concerning real property located in ten different counties throughout Texas. Therefore, Ocwen contends venue is improper in Nueces County for each and every Plaintiff other than Virginia Rosas. For this reason, Ocwen requests the claims of all Plaintiffs other than Virginia Rosas be dismissed or transferred to counties of proper venue.

---

[1] Incorrectly named Ocwen Loan Servicing, LLC, as successor by merger with Ocwen Federal Bank, FSB. Ocwen Loan Servicing, LLC, successor in interest to Ocwen Federal Bank, FSB is appearing and answering herein and is defending all claims against Ocwen Loan Servicing, LLC, as successor by merger with Ocwen Federal Bank, FSB.

## A.    Factual Background

Plaintiffs sued Ocwen asserting claims involving Ocwen's servicing and/or foreclosure of fifteen loans secured by real property. Of the twenty-two plaintiffs to this suit, only one[2] brings claims concerning real property located in Nueces County. *See* Plaintiffs' Original Petition ¶¶ 13-28, on file with this Court and incorporated herein by reference as if fully set forth. The remaining twenty-one Plaintiffs sue Ocwen concerning pieces of real property located outside of Nueces County. *Id.* Plaintiffs admit that Ms. Rosas makes the only claims concerning real property located in Nueces County. *Id.* ¶ 13. However, Plaintiffs wrongly attempt to join all of their claims because they generally "arise from a common nexus of facts and law, namely Ocwen's pattern of wrongful acts." *See id.* ¶ 13

Each Plaintiffs' loan "is governed by a loan note and security agreement (note or deed of trust)." *Id.* ¶ 48. Plaintiffs sue Ocwen for violations of federal and state laws by improperly initiating default and foreclosure proceedings under Plaintiffs' security agreements and engaging in improper debt collection activities. *Id.* §§ II-IV. They bring causes of action for: (1) wrongful foreclosure or wrongful attempted foreclosure; (2) breach of contract; (3) negligence and gross negligence; (4) intentional infliction of emotional distress; (5) unreasonable debt collection practices under Texas common law; (6) violations of the Texas Debt Collections Practices Act; (7) violations of the Texas Deceptive Trade Practices Act; and (8) breach of fiduciary duty. *See id.* ¶¶ 72-92. Among other things, Plaintiffs pray for rescission of the loan documents secured by their real properties. *Id.* ¶ 94.

**B.    Specific Denial of Venue Facts**

Ocwen specifically denies that all twenty-two plaintiffs' claims arise from a common nexus of fact and law.  Plaintiffs' claims involve *fifteen* separate mortgage/home equity loans. Ocwen's alleged actions or inactions on each of the subject loans were unique to each loan/property.  Ocwen did not engage in group servicing of these Plaintiffs' loans.  In fact, some of the loans were foreclosed on and some of the loans have not been foreclosed on. Additionally, only one named Plaintiff, Rosas, owned property in Nueces County.  The other plaintiffs' claims involve properties located in ten counties other than Nueces, and involve disputes over servicing of loans secured by the properties.

**C.    Argument and Authorities**

**1.    Nueces County is improper under the Mandatory Venue provision.**

Claims involving actions on real property must be brought in the county in which the property is located.  TEX. CIV. PRAC. & REM. CODE § 15.011.    In a suit where there are multiple plaintiffs, *each plaintiff must, individually of every other plaintiff, establish proper venue*.  *Id.* at § 15.003(a).  Each "plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed" unless the plaintiff establishes: (1) joinder is proper under the Texas Rules of Civil Procedure; (2) maintaining venue does not unfairly prejudice another party; (3) there is an essential need to have that plaintiff's claim tried in the county where suit is pending; and (4) the county is fair and convenient for that plaintiff and all persons.  *Id.*  Regarding the third element, the courts have held that an essential need is one that is "indispensably necessary."  *Surgitek v. Abel*, 997 S.W.2d 598, 604 (Tex. 1999).  Plaintiffs allege no facts in support of any of these elements.

---

med Plaintiff Virginia Rosas's claims concern real property located in Nueces County, Texas.

Regarding the element of "essential need", in *Surgitek v. Abel*, 106 plaintiffs sued manufacturers of silicone breast implants in a product lisability action. 997 S.W.2d at 600. The Defendants moved to transfer 104 of the claims because they claimed those plaintiffs could not independently establish proper venue in Bexar County. *Id.* To defeat transfer, the plaintiffs offered evidence of Defendants' MDL pleadings stating that there were common issues of fact and law across breast implant cases, Defendants' witness lists showing witnesses were located all over the country, and affidavits of commonality of questions of law and fact. *Id.* at 604. The court of appeals found that the plaintiffs needed to "pool resources against common experts and issues." *Id.* However, the Texas Supreme Court reversed, holding that the necessity of pooling resources was insufficient to establish the claims were indispensably necessary in Bexar County. *Id.*

Here, all twenty-two Plaintiffs' claims concern real properties located in fifteen counties across Texas. Pursuant to Section 15.011, the claims concerning the real properties must be brought in the counties in which the properties are located. The only property at issue located in Nueces County is the home of first-named plaintiff Virginia Rosas. All other Plaintiffs' claims should be transferred to the counties where their respective properties are located: Castro, Harris, El Paso, Galveston, Liberty, Tarrant, Bexar, Web, Hidalgo and Montgomery Counties.

### 2.    Nueces County is improper under the Permissive Venue rule.

Alternatively, under *Surgitek*, Plaintiffs' mere allegations of common questions of law and fact are insufficient to establish an essential need to have all of the claims tried in Nueces County. *Surgitek*, 997 S.W.2d at 604. In this action, none of the Plaintiffs (other than Ms. Rosas) have alleged any venue facts other than the existence of alleged common practices of Ocwen in servicing loans. Ocwen would show that none of the Plaintiffs (other than Ms. Rosas)

can show an essential need to have their claims tried in Nueces County, where none of the Plaintiffs reside, none of the properties are located, and none of the mortgage/home equity contracts were negotiated or signed.

Under the permissive venue statute, venue is proper: (1) "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;" or (2) in the county of the defendant's principal place of business. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1, 3). None of the events or omissions giving rise to Plaintiffs' claims occurred in Nueces County, other than first-named plaintiff Rosas. Ocwen is a Florida limited liability company with its principal place of business in Florida. Accordingly, Nueces County is not a proper venue under the permissive venue statute for any Plaintiff other than Ms. Rosas. The claims of Plaintiffs (other than Ms. Rosas) should, therefore, be transferred to the ten respective counties where the properties at issue are located and the loans were serviced – the counties where the events or omissions giving rise to Plaintiffs' claims occurred.

### D.    Request for Relief

Ocwen requests that the Court grant this Motion to Transfer Venue dismiss all Plaintiffs and claims other than claims by Plaintiff Virginia Rosas, or alternatively, sever and transfer claims to counties of proper venue as follows:

- Armando and Maria Casteneda — Castro County, Texas;
- Larry Coffman — Harris County, Texas;
- Patsy Gomez — El Paso County, Texas;
- Dylisaly Handy — Harris County, Texas;
- Michael Harlan — Galveston County, Texas;
- Arthur and Kathy LaFour — Liberty County, Texas;
- Michael and Tamenna Nichols — Galveston County, Texas;
- Lasandra and Cornell Applin — Tarrant County, Texas;
- Stella Salas — Bexar County, Texas;
- Marcilia Salazar — Web County, Texas;
- Keith and Esther Simpson — Harris County, Texas;
- Curtis and Elizabeth Sonntag — Harris County, Texas;